## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**FREDDY WAYNE NANCE**

**CIVIL ACTION**

**VERSUS**

**NO. 09-476-CN**

**MICHAEL J. ASTRUE,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION**

## RULING

This matter is before the Court on Plaintiff's appeal of a decision of the Commissioner of Social Security Administration pursuant to Section 205(g) of the Social Security Act. Plaintiff Freddy W. Nance, Jr. seeks judicial review of a final decision of the Commissioner of Social Security that denied his claim for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act).[1]   The Commissioner has filed an opposition to plaintiff's appeal, and plaintiff has filed a reply.   In making that final decision, the Administrative Law Judge reached the fourth step, and alternatively, the fifth step of the five-step sequential disability analysis set forth in 20 C.F.R.  § 416.920(b)-(f).[2]

## FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed his DIB application under Title II of the Act on December 5, 2005, alleging a disability onset date of January 2, 2003. (Tr. 8, 49.)  Plaintiff alleges disability due to a bipolar disorder and a bulging disc in his lower back. (Tr. 79.)  The application was denied initially and a request for hearing was timely filed.  On January 9,

---

[1]  42 U.S.C. § 423(d)(1)(A).

[2]  Brown v. Apfel, 192 F. 3d 492, 497, 498 (5th Cir. 1999); Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

2008, a video hearing was held before an Administrative Law Judge (ALJ), at which plaintiff, who was represented by counsel, plaintiff's wife, and a vocational expert testified. (Tr. 8, 749-795.)   At the time of the hearing, plaintiff was 31 years old, held a high school diploma, and had past relevant work as a grocery clerk, delivery driver, security guard, courier, temporary office clerk, collections clerk, and traffic manager for a radio station. (Tr. 786.)   On February 20, 2008, the ALJ issued a decision finding plaintiff not disable within the meaning of the SSA from January 2, 2003 through the date last insured, i.e., June 30, 2007. (Tr. 8.)

As a preliminary matter, the ALJ determined that plaintiff last met the insured status requirements on June 30, 2007. (Tr. 8,10.)[3]   In his decision, the ALJ made the following findings: 1) that plaintiff had not engaged in substantial gainful activity since his date of onset through his date last insured; 2) that plaintiff's degenerative disc disease, with residuals of lumbar surgery, and bipolar disorder were severe impairments, however neither of these impairments, either alone or in combination, met or equaled the requirements of a listed impairment for disability under the regulations; 3) that plaintiff's complaints of disability symptoms and limitations were not credible to the extent alleged; 4) that plaintiff retained the residual functional capacity to perform work at the light and sedentary exertional levels that did not require climbing ropes, ladders or scaffolds or working around unprotected heights and moving machinery parts; 5) that plaintiff, with respect to his mental residual

---

[3] In order to be entitled to a period of disability or disability insurance benefits, plaintiff must establish disability prior to his date last insured. *See,* 20 C.F.R. § 404.131.  Accordingly, the relevant time period for plaintiff's application is January 2, 2003, his alleged onset date, through June 30, 2007, his date last insured. (Tr. 10).

functional capacity, could understand, remember, and carry out simple to moderately detailed instructions in a work-related setting, interact with co-workers and supervisors under routine supervision, and interact with the general public only occasionally. (Tr. 10-12.)

Then, the ALJ, based on the record as a whole and with the assistance of a vocational expert, found that plaintiff could return to his past relevant work as a courier, grocery store clerk and security guard.  In the alternative, the ALJ found, again based on the testimony of the vocational expert, that plaintiff retained the ability to perform other work existing in the national economy, consisting of assembly jobs, company mail clerk, order clerk, and machine operator. (Tr. 8-17.)

Plaintiff appealed the ALJ's February 20, 2008 decision to the Appeals Council, which denied plaintiff's request for review on May 29, 2009, and the decision became the final decision of the Commissioner, which decision is now timely before this Court. (Tr. 2-4.)

## ANALYSIS

Judicial review of a final decision of the ALJ denying disability insurance benefits is limited to two inquiries: (1) whether there is substantial evidence in the record as a whole to support the ALJ's findings, and (2) whether the ALJ applied the proper legal standards.[4]  In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision. Id.  Substantial

---

[4] Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. Id. A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. Id.

The burden of proof in disability administrative hearings rests predominately on the plaintiff, and toward that end, the ALJ conducts a five-step analysis.[5] In the five-step sequence used to evaluate claims, the ALJ must determine whether: (1) the plaintiff is currently engaged in substantial gainful activity, (2) the plaintiff has a severe impairment or combination of impairments, (3) the impairment(s) meets or equals the severity of a Listing impairment in Appendix 1 of the regulations,[6] (4) the impairment(s) prevents the plaintiff from performing past relevant work and (5) the impairment(s) prevents the plaintiff from doing any other work.

In the instant case the ALJ found that plaintiff is not currently engaged in substantial gainful activity and that while plaintiff's impairments are severe, they do not meet or equal a listed impairment. In order for a plaintiff to show that his impairment(s) meets or equals a listing he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not

---

[5] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

[6] Listing impairments describe for each of the major body systems impairments that are considered to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. 404.1525.

4

qualify.[7]  To show that his impairments are equivalent to a listed impairment, the plaintiff must present medical findings equal in severity to all the criteria for the impairment most like his impairment.[8]  The burden of proof rests upon the plaintiff through the first four steps of the sequential evaluation.  Only if the plaintiff proves that he is no longer capable of performing his past relevant work does the burden shift to the Commissioner to establish that the plaintiff, nonetheless, has the ability to engage in other substantial gainful activity.[9]

Here, the plaintiff was found not disabled during the relevant period at step four of the sequential analysis because the ALJ found that he possessed the RFC to perform his past relevant work, and at step five,  that he was able, under his RFC, to perform other jobs in the national economy.

Plaintiff points to seventeen (17) errors of the ALJ that would require reversal and an award of benefits, however, for the purpose of brevity, the Court will group them as follows:

1.   The ALJ erred in not giving the proper weight to the opinions of Dr. Mark Zielinski and Mr. Ford Baker (Plf's Br., pgs. 4-5);

2.   The ALJ erred in his reliance on the opinion of Dr. John Hickman, the medical expert (Plf's Br., pg. 9.);

---

[7] Sullivan v. Zebley, 493 U.S. 521, 529-32, 110 S. Ct. 885, 891-92 (1990); 20 C.F.R.  § 404.1525.

[8] Id.

[9] Rivers v. Schweiker, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

3.      The ALJ erred in finding his bipolar disorder non-severe and did not properly analyze the severity of his impairments because the decision does not include a citation to <u>Stone v. Heckler</u>[10] (Plf's Br., pgs. 12-14.);[11]

4.      The ALJ erred in determining that his impairments did not meet or equal a listed impairment, including Listings 1.04[12] and 12.04 (Plf's Br., p. 10);

5.      The ALJ erred in his determination of plaintiff's RFC (Pfl's Br., pgs. 16-20);

6.      The ALJ erred in his assessment of the credibility of himself and his wife (Plf's Br., pg. 10); and

7.      The plaintiff claims that the Appeals Council did not consider the additional records submitted. (Plf's Br., pg. 22.)

Plaintiff asserts that his mental impairment meets or equals the listing of Affected Disorders (Listing 12.04, Pt. 4040, Subpt. P. App. 1).  As stated above, the ALJ found that while plaintiff's mental impairment of a Bipolar disorder is severe, it does not meet or equal a listed impairment.[13]

---

[10]  752 F.2d 1099 (5th Cir. 1985).

[11]  In the ALJ's third finding, he stated that claimant had the following severe impairments: degenerative disc disease with residuals of lumbar surgery and *bipolar disorder*.  (Emphasis supplied by the Court)

[12]  Plaintiff states that the ALJ mischaracterized his back impairment with respect to Listing 1.04A because the ALJ stated that there was no evidence of nerve root compression despite undergoing "decompression of the left nerve root". However, to meet the listing, one has to exhibit more than just "nerve root compression."  A plaintiff must show a disorder that results in evidence of nerve root compression characterized by neuro-anatomic distortion of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and a positive straight-leg raining test, if the problem involves the lower back. Plaintiff does not provide any evidence in his brief to indicate that plaintiff suffered from any of the criteria of Listing 1.04A.  In order to meet a listing, the Courts have been clear, that a claimant must provide medical findings that support each of the criteria for an equivalent impairment determination.  *See*, <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990); <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir. 1990).  Therefore, the Court finds that the ALJ's determination that plaintiff does not meet a listed impairment relative to his back impairment, was proper and that no error was committed.

[13]  Plaintiff incorrectly asserts that the ALJ found his bipolar disorder non-severe.

According to Listing 12.00 Mental Disorders, in order to be found disabled with a mental impairment a plaintiff must satisfy a two-prong test.[14]  The first prong is Section "A" of the Listing 12.00 Mental Disorders, which is a set of clinical findings required to find that a claimant exhibits any of the ten categories of mental disorders.[15]  The "A" criterion is to medically substantiate the presence of a mental disorder, while the "B" criteria, or the second prong, addresses "those functional limitations associated with mental disorders which are incompatible with the ability to work."[16]  In making his determination, the ALJ found that plaintiff suffers from the severe impairment of bipolar disorder, therefore satisfying the "A" criteria.  However, the impairment did not satisfy the second element or the "B" criteria because plaintiff did not demonstrate that his impairment reached the severity for this disorder to meet the requirements of "B."  To meet the criterion "B" severity plaintiff has to exhibit a condition which results in at least two of the following:

1.    Marked restriction of activities of daily living; or

2.    Marked difficulties in maintaining social functioning; or

3.    Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

---

[14]  "We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B ... of the listed impairment are satisfied."  20 C.F.R. pt. 404, subpt. P, app. 1, 12.00A

[15]  Id.

[16]  Id.

4.    Repeated episodes of deterioration or decompensation in work or work-like setting which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).[17]

With regard to his bipolar disorder and depression, the record indicates that plaintiff has been treated by Dr. J. Sanders at the Louisiana Psychiatric Clinic from December 2004 to November 2005 (Tr. 273-284); by Dr. Mark Zielinski from March 2006 to January 2008 (Tr. 114-137); was seen by social worker Fred Baker from November 2004 through January 2008 (Tr. 360-460); and was hospitalized for his bipolar disorder one time during the relevant period, i.e., in November 2005. (Tr. 299-308.)  Plaintiff also underwent a consultative examination by Dr. Joseph L. Palotta in June 2006 at the request of Disability Determination Services (Tr. 261.); and, at the request of the ALJ plaintiff's medical records were reviewed by Dr. Hickman, a medical expert.[18]

To support his argument, plaintiff relies on the opinions of Dr. Mark Zielinski and Mr. Fred Baker, plaintiff's social worker.  The ALJ reviewed records of Dr. Zielinski dating from April 3, 2006 through December 27, 2007, to make his disability determination. (Tr. 14.) Plaintiff relies on Dr. Zielinski's evaluation dated January 8, 2008, to support his argument that his bipolar disorder meets the criteria of Listing 12.04, wherein Dr. Zielinski noted a

---

[17] 20 C.F.R. pt. 404, subpt. P, app. 1, 12.04 B.

[18]  These are the extent of the medical records during the applicable period of January 2, 2003 through June 30, 2007. There are records regarding plaintiff's 2008 hospitalization to Our Lady of the Lake, however these records are not under consideration as they are outside the applicable period.

GAF of 40,[19] and diagnosed plaintiff as being bipolar and depressed.  Dr. Zielinski further indicated on this report regarding both his bipolar disorder and his depression, that plaintiff has marked restrictions in activities of daily living and marked difficulty in maintaining social functioning.  He also cited the presence of deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner.[20]  The ALJ discredited this report stating that there was contradictory evidence in the record.  The ALJ noted that Dr. Zielinski's own treatment notes often noted that plaintiff had a stable mood and bright affect (Tr. 123, 132, 133, 135, 137.)  While Dr. Zielinski indicated that plaintiff had deficiencies in his daily activities and concentration on his January 8th report, his records indicate that plaintiff spent some of his time reading, painting and writing, (125, 130), appeared more coherent in his thought and writing processes (Tr. 135), and in September 2007, plaintiff stated to Dr. Zielinski that his job interviews were going well. (Tr. 14, 122.) Further, plaintiff testified at the hearing that he was able to drive two to three times a week and goes to the post office, doctor, store, park and library.  Plaintiff also testified that he could tend to his personal needs, take care of the garbage, put away dishes, take care of the cats, mow the grass, and loves to read, paint and write.  With regard to reading, plaintiff stated that he loves to read Russian novels by Dostoevsky and Tolstoy and considers them light reading. (Tr.774-775.)

---

[19]  *See Diagnostic and Statistical Manual of Mental Disorders* (4th Ed.  Text Rev., 2000) (unless otherwise indicated by the examiner, a GAF score is generally for the current period, i.e. level of functioning at the time of evaluation only). This is plaintiff's "current GAF".(Tr. 114.)

[20]  Plf's Br. Pg. 4-5, Dr. Zielinski's report, Tr. 114-120.

Plaintiff was also seen by Mr. Ford Baker, LCSW, a clinical social worker. Under the regulations there are "acceptable medical sources" and "other sources."[21] Social Workers are considered "other sources" and therefore cannot be considered a treating source or offer a medical opinion that would be entitled to controlling weight. As noted by the Commissioner, contrary to the ALJ's statement that Mr. Bakers records consisted only of his narrative report, Mr. Baker provided progress notes documenting his sessions with plaintiff (Tr. 364-460.) Therefore, while Mr. Baker cannot be treated as an acceptable medical source under SSR 06-03p, these notes may be used solely to provide insight into the severity of a claimant's alleged impairment and how it affects a claimant's inability to function.[22] A review of the notes indicates that they appear to be based solely upon plaintiff's subjective complaints to Mr. Baker and document plaintiff's goals and offer instruction to improve his situation. Plaintiff fails to point to any portion of the notes of Mr. Baker that would change the decision of the ALJ. He simply states that the ALJ should have considered them. After review, the Court agrees with defendant that these notes are plaintiff's subjective complaints to Mr. Baker, and since plaintiff does not give the Court any specific evidence that would alter the ALJ's decision, plaintiff's argument that the ALJ should have considered them simply because they were there, is without merit.

Next, plaintiff was hospitalized one time during the relevant period for suicidal tendencies. This hospitalization was in November 2005, at the River Oaks Hospital, for a

---

[21] *See,* 20 C.F.R. § 404.1513(a), (d); SSR 06-03p, 2006 WL 2329939 at *2.

[22] *See,* SSR 06-03p, 2006 WL 2329939 at *2.

period of five days. (Tr. 299-308).  Upon admission, plaintiff was noted to be alert and fully oriented with a depressed affect; spoke fluently with normal rate, volume, and tone; could concentrate adequately to spell "world" forward and backward; and had intact memory. (Tr. 303.)  Upon discharge, his condition was stable, and plaintiff stated that he was not suicidal or homicidal, denied hallucinations, and that he would comply with his medications and appointments.  His prognosis was "fair with treatment." (Tr. 300.)

Plaintiff also underwent a psychological consultative examination by Dr. Joseph Palotta on June 21, 2006. (Tr. 261-264.)  Dr. Palotta noted that plaintiff's associations were intact and he could repeat 5 digits forward and backward, despite his anxious mood and depressed effect.  He also noted that plaintiff's daily activities included writing, reading, painting, driving, doing housework, going out for coffee with friends, visits the park and family. (Tr. 262.)

Given the above evidence, the Court finds that the ALJ was proper in the weight given to the opinions of Dr. Zielinski and Mr. Baker, and in his findings that plaintiff has mild restrictions in activities of daily living, moderate limitations in social functioning, and moderate difficulties with regard to concentration, persistence or pace.

Another requirement of the "B" criteria is that a claimant experience repeated episodes of decompensation, and in order to show the repeated episodes, plaintiff must show three episodes within one year, each lasting for at least two weeks.[23]   Plaintiff asserts that

---

[23] *See*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(4).  "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily re1uire increased treatment or a less stressful situation. Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or

the ALJ erred in his determination that plaintiff suffered only one or two episodes of

decompensation, and argues as follows:

> That the testimony of the claimant and his wife, the Our Lady of the Lake
> Regional Medical Center medical records, and Dr. Zielinski's notes covering
> about a 1-1/2 year period, disclose **multiple** episodes of severe fluctuations in
> claimant's functional mental status and **multiple hospitalizations** for
> hypermania and depression. (Plf's Appeal pg. 12)

However, this is conclusory evidence and plaintiff does not point to any specific record

medical evidence to indicate "multiple hospitalizations."  To the contrary, the record

indicates that when plaintiff was admitted to the hospital in November 2005, the physicians

noted that he had no prior psychiatric admissions. (Tr. 305.)  The only other admission was

in April 2008, which was ten months after the expiration of plaintiff's insured status. (Tr.

474.)  Therefore, the Court finds that the ALJ was proper in determining that plaintiff only

suffered from one or two episodes of decompensation, and therefore does not meet the "B"

criteria of the listing.

Plaintiff also argues that the ALJ erred in his reliance on the opinion of Dr. John

Hickman, a medical expert, because Dr. Hickman never saw the plaintiff and never looked

at medical records for any period after April 5, 2007.[24]  First of all, the regulations permit an

ALJ to ask for and consider opinions from medical experts on the nature and severity of a

plaintiff's impairment as well as the question of medical equivalence.[25]  Secondly, it is clear

---

documentation of the need for a more structures psychological support system (e.g. hospitalizations....)...."

[24] Plaintiff corrected this date in his Reply Memorandum, and stated that this date was incorrect in that Dr. Hickman only reviewed medicals through July 2006. (Dkt. 17)

[25] *See*, 20 C.F.R. 404.1527(f)(2)(iii).

from the decision, that the ALJ did not simply base his decision on Dr. Hickman's report, but instead, reviewed the record as a whole as well as the testimony given at the hearing. Further, Plaintiff infers in his reply brief that since Dr. Hickman only reviewed records through July 2006, that the ALJ should have considered more recent probative medical evidence which showed that the plaintiff's condition was not substantially improving. However, the Fifth Circuit has held that evidence showing the degeneration of a claimant's condition after the period of insured status had expired is not relevant to the Commissioner's analysis.[26] Plaintiff then argues that Dr. Hickman indicated on his report that his findings may be inaccurate or unreliable due to the plaintiff's use of marijuana. Plaintiff states in his reply brief that Dr. Hickman merely picked up a single anecdotal report of marijuana use, without citing any statutory or medical basis for such finding. The Court disagrees. Throughout the record, plaintiff states that he used marijuana on a regular basis until he quit in 2006. Plaintiff's wife also testified to this effect. (Tr. 784-785.) Dr. Hickman noted the marijuana use and stated "claimant's bipolar is influenced by his chronic marijuana usage." The ALJ had to consider plaintiff's history of marijuana abuse. He also considered the fact that plaintiff and his wife both testified that he had stopped using it in 2006, and found that plaintiff's symptoms of depression would obviously be exacerbated by his polysubstance abuse and that considering he has discontinued the use of marijuana, his RFC finding would be reasonable. (Tr. 12.) Further, plaintiff admitted that when he used marijuana the

---

[26] Torres v. Shalala, 48 F. 3d 887, 894, n. 12 (5th Cir. 1995).

"paranoia is, is far too much." (Tr. 763.)  Therefore, plaintiff's argument with respect to Dr. Hickman's report is without merit.

Plaintiff also argues that the ALJ erred in not properly analyzing the severity of his impairments because the decision does not include a citation to <u>Stone v. Heckler</u>.[27]   In this regard, the Court concurs with defendant Commissioner.  In <u>Stone v. Heckler</u>, the Fifth Circuit required the agency to set forth its iteration of the severity standard either by an express reference to the *Stone* opinion, "or another of the same effect." [28]  In this case, the ALJ cited to SSR 85-28, wherein the commissioner adopted the severity standard set forth in <u>Stone</u>. (Tr. 9.)[29]   Thus, the ALJ did comply with the ruling of <u>Stone</u> and cited to an opinion of the same effect.[30]   Further, the Fifth Circuit has found in numerous cases that the ALJ's failure to explicitly reference the <u>Stone</u> opinion by name did not require remand where the ALJ did not issue a final decision at step two of the evaluation process.  *See*, <u>Shipley v. Secretary of Health & Human Services</u>, 812 F.2d 934, 935 (5th Cir. 1987)(rejecting claimant's argument that the ALJ cited the improper severity standard when the ALJ's disability determination was not made at step two); <u>Chaparro v. Bowen</u>, 815 F. 2d 1008, 1011 (5th Cir. 1987)(finding claimant's *Stone* argument irrelevant where the ALJ's analysis did not end at step two, but rather proceeded to step four); <u>Jones v. Bowen</u>, 892 F.2d 524,

---

[27]  752 F.2d 1099 (5th Cir. 1985).

[28]  <u>Id.</u>, Defendant's Reply Brief, pg. 11.

[29]  *See*, SSR 85-28, 1985 WL 56856 at *2 (1985).

[30]  *See*, <u>Stewart v. Astrue</u>, 2009 WL 187581 at *3 (M.D.La. Jan. 26, 2009.) (Concluding that the ALJ's citation to SSR 85-28 fulfilled the requirements of *Stone*.)

526 n.1 (5th Cir. 1987) (rejecting as "disingenuous" claimant's argument that the ALJ applied the improper severity standard because, as ALJ proceeded to steps four and five, claimant's case was not prematurely denied based on an improper determination of non-severity); Lopez v. Bowen, 806 F.2d 632, 634 n. 1 (5th Cir. 1987)(distinguishing *Stone* when the ALJ determined that claimant had severe impairments and proceeded to step four).  Therefore, this argument by plaintiff too is without merit.

While the Court understands that plaintiff suffers from a bipolar disorder, the extent to which Dr. Zielinski describes his deficiencies is not supported by the other evidence in the record.  Further, plaintiff's arguments are conclusory and he has failed provide the Court with any specific evidence in the record to discredit the findings of the ALJ.   Plaintiff's arguments are based on Dr. Zielinski's report, and plaintiff's self serving testimony.[31] Therefore, the Court finds that there is substantial evidence to support the ALJ's finding that plaintiff did not meet the "B" criteria of the Listing 12.00 mental disorders, and consequently his impairment did not meet or equal a listed impairment.

Plaintiff sets forth that the ALJ committed reversible error in determining his residual functional capacity (RFC).[32]   The ALJ found that, through his date last insured, plaintiff

---

[31]  Plaintiff, in his appeal, cites to numerous regulations and social security rulings, however does not provide the Court with any parts, if any, of the record that prove his argument relative to these authorities.  See also plf's appeal at pgs. 21-22, wherein he sets forth self-serving testimony.

[32]  Residual functional capacity is the most a plaintiff can do despite the functional limitations and restrictions caused by his medically determinable impairments, and it is based upon all the relevant evidence, including medical records and observations of treating physicians and other, as well as the plaintiff's own descriptions of his limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c); *Social Security Ruling (SSR)* 96-8p, *Policy Interpretation Ruling Title II and XVI: Assessing Residual Functional Capacity In Initial Claims*, 1996 WL 374184 at *2-3,5.

retained the RFC to perform work at the light and sedentary exertional levels that did not require climbing ropes, ladders or scaffold or working around unprotected heights and moving machinery parts (Tr. 12).  With respect to his mental residual functional capacity, the ALJ determined that plaintiff could understand, remember, and carry out simple to moderately detailed instructions in a work-related setting; interact with co-workers and supervisors under routine supervision; and interact with the general public only occasionally (Tr. 12.)  Plaintiff further argues that he is unable to work a standard 40 hour workweek and that the ALJ failed to consider the effect of his bipolar disorder and depression on his ability to work in violation of SSR 96-8p.

In determining a plaintiff's RFC the ALJ's will assess an individual's limitations and then determine if the plaintiff can work "on a regular and continuing basis."[33]   The social security ruling plaintiff points to makes a distinction between what the ALJ must consider and what the ALJ must articulate in the written a opinion.[34]   Under "Narrative Discussion Requirements" the SSR 96-8p provides, in part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record....

---

[33] 20 C.F.R. § 404.1545(b)-(c); SSR 96-8p, 1996 WL 374184 at *3 (July 2, 1996).

[34] *See*, SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996).

16

The ruling does not state that the ALJ has a duty to include a function-by-function analysis, but does require the ALJ to explain how the evidence supports his conclusion relative to plaintiff's limitations and to discuss his ability to perform sustained work.[35] The ALJ met these requirements in his decision when he specifically discussed the objective medical evidence and the testimony of both plaintiff and his wife. (Tr. 11-15.) Further, the ALJ did set forth the plaintiff's ability to perform sustained work activities in an ordinary work setting on a regular continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and did describe the maximum amount of each work-related activity the individual can perform in his RFC, set forth above. To support his argument plaintiff argues that the ALJ ignored a) his testimony and that of his wife as to recent unsuccessful work attempts, b) the medical examiner's opinion that he had at least a moderate limitation in his ability to complete a normal work day, and c) the VE's testimony that claimant would not be able to miss more than 1 day of work a week and remain employed. [36] The above statement is the extent of plaintiff's "evidence," in support of his argument, other than quoting from the social security ruling and citing case law. A statement from Plaintiff, one line from an opinion, and one statement from the VE does not equate to substantial evidence. The ALJ, on the other hand, cited to specific medical evidence and gave his reasons for accepting or rejecting same. He considered plaintiff's subjective complaints, including pain, and found that while the pain plaintiff experiences is limiting,

---

[35] Id.

[36] Plaintiff's memorandum at p. 10, #6.

when his complaints are compared with the total evidence, it was not severe enough to preclude all types of work. (Tr. 14.)   The ALJ did not discount all of the plaintiff's complaints and stated that "Given the claimant's subsequent lumbar surgery, he would undoubtedly have some pain. However the claimant's treating physicians did not place any functional restrictions on his activities that would preclude light work activity ...." (Tr. 15.)

Further, as the Commissioner points out, the Fifth Circuit does not require that an ALJ make a specific finding that a plaintiff can maintain a job on a regular and continuing basis unless "the claimant's ailment waxes and wanes in its manifestation of disabling symptoms." Frank v. Barnhart, 326 F.3d 618, 619 (5th Cir. 2003).  The Fifth Circuit then held that just because a claimant claims that he has good days and bad days, this claim does not rise to the level of waxing and waning anticipated in the Frank case. *See*, Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).  Here, while plaintiff experiences changes in mood, this change does not result in "periods of incapacity" as described in Frank.[37]  Plaintiff himself testified that he could perform clerical work "easy enough" if it was not in a public situation. (Tr. 782.) Further, the ALJ took into account this limitation by restricting his RFC.  The ALJ has the sole responsibility for evaluating a plaintiff's residual function capacity based on the record as a whole.[38]  Also, social security regulations do not require an ALJ to make any particular

---

[37] Frank, 326 F.3d at 619("For example, if Frank had alleged that her generative disc disease prevented her from maintaining employment because every number of weeks he lost movement in her legs, this would be relevant to the disability determination.")

[38] Villa v. Sullivan, 895 F.2d 1019, 1023-24 (5th Cir. 1990); 20 C.F.R. § 404.1546.

residual functional capacity finding if the evidence does not support such a conclusion.[39] Therefore, the Court finds that the ALJ followed the proper legal standards, including the requirements of SSR 96-8p, in determining plaintiff's RFC, and plaintiff has failed to prove the contrary.

Plaintiff asserts that the AlJ erred in his assessment of the credibility of himself and his wife.  As stated above, the ALJ also considered the testimony of both the plaintiff and his wife in determining his RFC, but found that inconsistences in plaintiff's reporting tended to undermine his credibility.   The Fifth Circuit has held that the judgment as to the credibility of testimony is the sole province of the ALJ.[40]  The ALJ's credibility determination is entitled to considerable deference.[41]  Furthermore, the regulations provide that a claimant's subjective complaints are considered credible only to the extent that the record evidence supports them. After considering both the plaintiff's testimony and complaints, and the record as a whole, the ALJ found the plaintiff's credibility to be lacking and the Court will give considerable deference to that determination.

Finally, plaintiff claims that the Appeals Council "apparently did not consider" the additional records plaintiff submitted.  Plaintiff submitted records dated April and May 2008 (Tr. 461-746), which are clearly outside the relevant period of January 3, 2003 through June 30, 2007. (Tr. 10.)  However, the Appeals Council properly declined to review the ALJ's

---

[39]  Id. (the Agency "...will assess your residual functional capacity based on all the relevant medical and other evidence.")

[40]  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

[41]  Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

decision because the additional evidence submitted covers a period that is ten months after the expiration of his insured status and therefore could not change the ALJ's decision. (Tr. 3.)  As stated before concerning these records, the Fifth Circuit has held that evidence showing the degeneration of a claimant's condition after the period of insured status had expired is not relevant to the Commissioner's Analysis.[42]  Therefore, plaintiff's argument lacks merit.

The Court finds, therefore, that the ALJ followed the proper legal standards in assessing plaintiff's RFC, and that the record contains substantial evidence to support both that determination and the ALJ's final decision that plaintiff is not disabled.

Therefore,

**IT IS ORDERED** that the Commissioner's decision be affirmed and plaintiff's appeal be dismissed.  Judgment will be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, September 3, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[42] <u>Torres</u> 48 F.3d at 894 n. 12.